IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAC FUNDING CORPORATION, | ) | FILED: JULY 08, 2008 |
| | ) | 08CV3876 |
| Plaintiff, | ) | JUDGE NORGLE |
| | ) Case No.: | MAGISTRATE JUDGE DENLOW |
| v. | ) | AEE |
| | ) | |
| TERRY SLAGLE and TAMI SLAGLE, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES, MAC FUNDING CORPORATION, by and through its attorneys, MASUDA, FUNAI, EIFERT & MITCHELL, LTD., and for its Complaint, states as follows:

## THE PARTIES

1. Plaintiff MAC FUNDING CORPORATION ("MAC") was and now is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Wood Dale, Illinois.

2. Defendant TERRY SLAGLE is a citizen and resident of the State of Texas.

3. Defendant TAMI SLAGLE is a citizen and resident of the State of Texas.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1) since the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00 and is between citizens of different states. Venue is proper pursuant to 28 U.S.C. §1391. Additionally,

the Guaranty (as defined herein) that is the subject of this suit contains a forum selection clause, designating, at Plaintiff MAC's election, this judicial district as the proper jurisdiction and venue of any action brought by MAC.

## COUNT I

### CLAIM ON GUARANTY

5. MAC realleges and reincorporates as if fully set forth herein the allegations of paragraphs one (1) through four (4), inclusive.

6. TS PRINTING COMPANY, INC. ("TS Printing"), which upon information and belief has filed for bankruptcy protection, entered into Equipment Lease Agreement No. SUL-0195 dated on or about July 24, 2003 (the "Lease Agreement") with MAC for the lease of one (1) New Mitsubishi Diamond 3000 R-4 Four (4) Color Sheetfed Printing Press, together with all auxiliary equipment (collectively, the "Subject Equipment"). A copy of the Lease Agreement is attached hereto and incorporated herein as Exhibit "A."

7. The Lease Agreement requires TS Printing to make eighty-five (85) monthly lease rental payments to MAC, with the first eighty-four (84) installments each in the amount of $15,800.00 and the remaining one (1) installment in the amount of $237,000.00.

8. TS Printing has failed to make the required payments under the Lease Agreement. Demand has been made for the full payment of the delinquent balance. MAC has satisfied its obligations under the Lease Agreement.

2

9. Notwithstanding such demand, TS Printing has made no further payments to MAC, and has, upon information and belief, filed for bankruptcy protection.

10. Paragraph 16 of the Lease Agreement provides that TS Printing shall be in default if it fails to pay when due any rent or other amount due under the Lease Agreement. As a result thereof, TS Printing is in default under the Lease Agreement.

11. Paragraph 17 of the Lease Agreement provides that, upon default by TS Printing, MAC may declare all sums due and to become due immediately due and payable.

12. The Lease Agreement allows MAC to recover from TS Printing its reasonable attorneys' fees, interest and other costs.

13. As a result of the default by TS Printing, there is now due and owing as of July 7, 2008 from TS Printing to MAC under the Lease Agreement the sum of $933,273.14.

14. On or about July 24, 2003, Terry Slagle and Tami Slagle (collectively, the "Guarantors") executed a guaranty as to the obligations contained in the Lease Agreement (the "Guaranty"). A copy of the Guaranty is attached hereto as Exhibit "B."

15. Pursuant to the terms of the Guaranty, the Guarantors each unconditionally guaranteed, jointly and severally, to MAC the full and prompt payment and performance by TS Printing of all obligations that TS Printing may have to MAC under the Lease Agreement.

16. TS Printing's obligations under the Lease Agreement as guaranteed by the Guarantors are all in default and the amount due as of July 7, 2008 on the Lease Agreement is $933,273.14. MAC has satisfied its obligations under the Guaranty.

17. Accordingly, there is due and owing as of July 7, 2008 from Terry Slagle and Tami Slagle to MAC the sum of $933,273.14, plus attorneys' fees as provided in the Lease Agreement and the Guaranty, and interest and costs for this suit.

WHEREFORE, MAC FUNDING CORPORATION prays:

A. That judgment be entered against TERRY SLAGLE and TAMI SLAGLE, jointly and severally in an amount in excess of $933,273.14, plus attorneys' fees as provided in the Lease Agreement and the Guaranty, and interest and costs of this suit; and

B. For such other and further relief as the Court may deem just and equitable.

Dated: July 8, 2008

Respectfully submitted,

MAC FUNDING CORPORATION

By: /s/ Rein F. Krammer
    One of Its Attorneys

Rein F. Krammer, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
Attorneys for Plaintiff, MAC Funding Corporation
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
(312) 245-7500
(312) 245-7467

RFK:cmp
N:\SYS08\6309\Lit\01110001.doc

# EXHIBIT "A"

Lease No. <u>SUL0195</u>

# EQUIPMENT LEASE AGREEMENT

## TITLE PAGE

**Lessor:**

| | | | | | |
|---|---|---|---|---|---|
| Name | MAC FUNDING CORPORATION | | | | |
| Address | 1500 Michael Drive | | | | |
| City | Wood Dale | | | | |
| State | IL | Zip | 60191 | Phone | 630-238-5605 |
| Contact | Mr. B. Krawulski | | | | |
| Position | Credit Manager | | | | |

**Lessee:**

| | | | | | |
|---|---|---|---|---|---|
| Name | TS PRINTING COMPANY, INC. | | | | |
| Address | 8000 Sovereign Row; Suite A | | | | |
| City | Dallas | | | | |
| State | TX | Zip | 75247 | Phone | 214-630-0300 |
| Contact | Mr. Terry Slagle | | FEIN No. | 75-2426126 | |
| Entity Type | S-Corporation | | | | |
| State of Organization | TEXAS | | | | |
| State of Organization ID No. | 0122751-00 | | | | |

## EQUIPMENT SCHEDULE

| Quantity | Description – New/Used, Make, Model and Serial Number |
|---|---|
| One (1) | New Mitsubishi Diamond 3000R-4 (four) Color Sheetfed Printing Press together will all auxiliary equipment. |

Equipment Location, if Other than Lessee's Address Noted Above:

| Address | City | County | State | Zip |
|---|---|---|---|---|

### Terms of Rental

| Term No. of Payments: | First Payment Due Date | Monthly Rental Payment (Plus Applicable Tax) | Interest Rate |
|---|---|---|---|
| 1-84 | 270 days after delivery | $15,800 | 290 basis points over co-terminous treasuries |
| 85 | | 237,000 | |

(All amounts listed on this document reflect U.S. Dollars.)

### Advance Rentals

Payment of $ 0    ☐ First Payment's
(Plus Applicable Tax)    ☐ Last Payment

Security Deposit $ _____
Advance payments are due upon the execution of this Equipment Lease Agreement.

Shipment Terms: F.O.B. _____    Taxable: Yes ___ No ___
Exemption No. _____ (If applicable)

Purchase Option: Yes ___ No ___
Purchase Option Price: $ 1.00

**THIS LEASE IS SUBJECT TO THE ATTACHED TERMS AND CONDITIONS OF LEASE. THIS IS A NON-CANCELLABLE LEASE.** Not withstanding anything to the contrary, the TITLE PAGE of the Equipment Lease Agreement shall control in the event of any conflict between the terms of this TITLE PAGE and those contained in the TERMS AND CONDITIONS OF LEASE.

**Lessor:** MAC FUNDING CORPORATION

By: _____
Title: Mr. K Haruta, President
Date: July 22, 2003

**Lessee:** TS PRINTING COMPANY, INC.

By: [signature]
Title: Mr. Terry Slagle, President
Date: 7/24/03

# EQUIPMENT LEASE AGREEMENT
## TERMS AND CONDITIONS OF LEASE

1. **Lease:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the equipment described in the Equipment Schedule set forth on the Title Page hereof and on any attached supplemental schedules, and any and all auxiliary equipment and accessories therefor (which together with all spare parts, attachments, accessories, accessions, additions, replacements, substitutions thereto or thereof, incorporated therein, made part thereof or otherwise attached or affixed thereto, are hereinafter collectively called the "Equipment"), subject to the terms and conditions of this Equipment Lease Agreement ("Lease"). If more than one Lessee is named in this Lease, the liability of each Lessee will be joint and several. This Lease shall become effective, binding and enforceable upon execution by Lessor and Lessee and is not cancelable without the express written consent of Lessor.

2. **Delivery and Installation:** Lessee shall be solely responsible to arrange for and effect the shipment, delivery and installation of the Equipment at the Equipment Location indicated on the Title Page of this Lease. In no event will Lessor be liable to Lessee for any loss or damage whatsoever arising from or in connection with the shipment, delivery or installation of the Equipment or any delay or failure in connection therewith.

3. **Term:** The term of this Lease is for the number of months shown on the Title Page. Upon delivery, Lessee shall execute a Delivery Certificate and Equipment as provided by Lessor. The term of the Lease shall commence on the date of delivery of the Equipment as evidenced by the Delivery Certificate and related Bill of Lading, provided that, in the event that installation is delayed by reason of any fault of Lessee, Lessee shall in any event commence the payment of monthly rental payments on the First Payment Due Date.

4. **Delivery Certificate:** Lessee's execution and delivery of the aforesaid Delivery Certificate to Lessor with respect to the Equipment shall conclusively establish that, as between Lessor and Lessee, but without limiting or otherwise affecting Lessee's or Lessor's rights, if any, against any manufacturer, the Equipment is acceptable to and accepted by Lessee under this Lease notwithstanding any defect with respect to design, manufacture, condition or in any other respect, and that the Equipment is in good order and condition and conforms to the specifications applicable thereto and to all applicable governmental requirements and specifications.

5. **Lease Payments; Adjustments:** (a) Lessee will pay to Lessor the monthly rental for the Equipment in the amount shown on the Title Page, plus any and all applicable tax amounts due. All rent shall be paid without notice or demand and without abatement, deduction or set off of any amount whatsoever at the office of Lessor at the address set forth on the Title Page, or to such other person or address as Lessor may hereafter designate. LESSEE'S PAYMENT OBLIGATIONS HEREUNDER SHALL BE IRREVOCABLE, ABSOLUTE AND UNCONDITIONAL, AND WILL NOT BE SUBJECT TO ANY ABATEMENT, DEFENSE, SETOFF, COUNTERCLAIM OR RECOUPMENT WHATSOEVER FOR ANY REASON (INCLUDING, BUT NOT LIMITED TO, ANY INABILITY TO USE OR OPERATE, OR ANY LIMITATION ON THE USE OR OPERATION OF, THE EQUIPMENT). The Security Deposit set forth herein shall be due upon execution of this Lease. The first monthly rental payment will be due on the First Payment Due Date set forth on the Title Page and subsequent monthly rental payments shall be made on the same day thereafter for each subsequent month until all amounts due hereunder are paid in full. (b) The monthly rental set forth herein is based upon the estimated cost of the Equipment (including accessory, auxiliary or peripheral equipment, taxes, freight, delivery charges, and/or any other charges which Lessor agrees to pay/advance at the request of Lessee) and accordingly, the monthly rent will be adjusted accordingly if such costs differ from such estimates. Lessee hereby authorizes Lessor to so adjust such rental payments upon determination of the actual cost of the Equipment.

6. **Late Charges:** Lessee agrees to pay upon demand by Lessor, to the extent not prohibited by law, a collection service charge of Ten ($10.00) Dollars or Five (5.00%) percent of the delinquent payment, whichever is greater.

7. **Purchase Option:** If there is a Purchase Option and Purchase Option Price specified on the Title Page, upon the expiration of the term of this Lease, Lessee shall have the right and option to purchase not less than all of the Equipment for the Purchase Option Price shown herein, plus any applicable tax, by so notifying Lessor in writing not less than ninety (90) days prior to the expiration of the Lease term. Such purchase option may be exercised by Lessee only if Lessee is not then in default hereunder. If Lessee exercises such purchase option, such purchase option will be deemed exercised by Lessee as of the day immediately following the date of expiration of the term of this Lease by Lessee's delivery to Lessor of cash or certified check in the total amount shown herein. LESSOR'S SALE OF THE EQUIPMENT TO LESSEE WILL BE WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS, IMPLIED OR STATUTORY, INCLUDING BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, AND WILL BE ON AN "AS IS, WHERE IS AND WITH ALL FAULTS" BASIS.

8. **Early Termination:** So long as Lessee is not in default hereunder, Lessee may elect at any time to terminate this Lease with respect to the Equipment covered hereby by paying to Lessor the aggregate amounts due and to become due and owing to Lessor hereunder, including but not limited to any and all monthly rental payments, unpaid late charges and property taxes, less any unearned finance charges, plus an Early Termination Premium computed as set forth herein. The Early Termination Premium shall be an amount equal to the original amount funded/financed by Lessor for the Equipment multiplied by the applicable percentage set forth in the table below.

| Early Termination Exercised During the Following Period of Monthly Rent Payment | Applicable Percentage |
|---|---|
| 1st month – 12th month | 5% |
| 13th month – 24th month | 4% |
| 25th month – 36th month | 3% |
| 37th month – 48th month | 2% |
| 49th month – 60th month | 1% |
| 61st month or later | 0% |

For the purpose of this Lease, the Applicable Percentage and all late charges shall be determined by Lessor and the same shall be final and binding upon Lessee.

9. **DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY:** LESSOR MAKES NO WARRANTIES WHATSOEVER AND HEREBY DISCLAIMS ANY AND ALL WARRANTIES OF ANY NATURE WHATSOEVER, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR USE, VALUE, TITLE, COMPLIANCE WITH SPECIFICATIONS, DESIGN, CONDITION, CAPACITY, DURABILITY, QUALITY OF MATERIAL OR WORKMANSHIP, CONFORMITY OF ANY DESCRIPTION OR PATENT INFRINGEMENT. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE EQUIPMENT, DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF. LESSOR SHALL NOT BE LIABLE FOR ANY DAMAGES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, ALL OF WHICH ARE EXPRESSLY WAIVED. LESSEE EXPRESSLY ACKNOWLEDGES THAT (A) LESSOR DID NOT SELECT, MANUFACTURE OR SUPPLY THE EQUIPMENT, (B) LESSOR ACQUIRED THE EQUIPMENT AT THE REQUEST OF LESSEE SOLELY IN CONNECTION WITH ENTERING INTO THIS LEASE AGREEMENT AND (C) LESSEE HAS MADE THE SELECTION OF THE SUPPLIER OF THE EQUIPMENT AND EACH ITEM OF THE EQUIPMENT BASED ON ITS OWN JUDGEMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSEE LEASES THE EQUIPMENT "AS IS, WHERE IS AND WITH ALL FAULTS". LESSEE WAIVES ANY AND ALL CLAIMS AGAINST LESSOR AND THE MANUFACTURERS, SELLERS AND SUPPLIERS OF THE EQUIPMENT FOR PUNITIVE DAMAGES RELATING TO THE EQUIPMENT, THIS LEASE, THE RELATIONSHIP OF THE PARTIES AND ANY OTHER MATTERS RELATED THERETO.

10. **Possession, Equipment Location, Inspection and Return:** So long as Lessee is not in default under this Lease, Lessee shall be entitled to the possession and use of the Equipment in accordance with the terms of this Lease. Lessee shall not remove the Equipment from the Equipment Location set forth on the Title Page or part with possession or control of the Equipment without prior written consent of Lessor. The Equipment is, and shall at all times be and remain, personal property, notwithstanding that the Equipment or any part thereof may now be or hereafter become in any manner affixed or attached to or embedded in, or permanently resting upon any real property. Lessor may enter the premises where the Equipment is kept and inspect it during normal business hours. At the expiration or earlier termination (upon Lessee's breach or default) of the term of this Lease, except in the case of retention by Lessee upon purchase of the Equipment, Lessee, at its expense, will return the Equipment, properly packed and crated with freight prepaid, to Lessor at such place as Lessor may designate, in the same repair, condition, and working order as at the commencement of the Lease, reasonable wear and tear resulting from proper use excepted.

11. **Equipment Use and Maintenance:** Lessee, at its sole expense, will at all times keep the Equipment in good repair, condition, and working order and in compliance with all applicable requirements of law and meeting standards sufficient to satisfy any relevant manufacturer's requirement for warranty. Lessee will make no alterations, additions or improvements to the Equipment, which are permanent without the prior written consent, and in compliance with any instructions or directives, of Lessor which substantially impair the value of the equipment;provided,however,Lessee may make alterations, additions or improvements to the Equipment which it may so elect, if it first gives Lessor fifteen (15) days advance notice thereof, and Lessor does not object thereto in writing within such fifteen (15) days. All such additions or improvements will immediately become the property of Lessor, and will be returned to Lessor with the Equipment upon the expiration or earlier termination of this Lease, unless Lessor otherwise requires Lessee to restore the Equipment to its original state. In no event shall Lessor be required to maintain, service, repair, restore, renew, replace add to or improve in any manner whatsoever any of the Equipment.

12. **Risk of Loss or Damage:** Lessee assumes all risk of loss or damage to the Equipment from any cause whatsoever. In the event of any such loss or damage, Lessee will, at Lessor's sole option, (a) make all repairs necessary to place the same in good repair, condition and working order, or at the option of Lessor (b) pay to Lessor the purchase option amount stated herein, if any, plus any and all other amounts payable to Lessor hereunder. The total or partial destruction of the Equipment, or total or partial loss of use or possession thereof to Lessee, shall not relieve Lessee from the duty to pay rent as herein provided. Any transfer of title to the Equipment to Lessee will be upon the same terms as provided under the purchase option described above.

13. **Insurance:** Lessee, at its sole expense, will keep the Equipment insured at all times against all risks of loss or damage from any cause whatsoever in an amount equal to the full undepreciated replacement value (new) of the Equipment, at Lessor's option. All insurance will be of a type, form, in amounts, with a company and under terms and conditions satisfactory to Lessor. Lessee shall designate Lessor as a loss payee or additional party insured on each insurance policy. Such insurance policy shall provide that no cancellation or nonrenewal thereof will be effective without 30 days prior written notice to Lessor of such cancellation or nonrenewal. The proceeds of insurance payable as a result of loss or damage to the Equipment will be applied to Lessee's obligations hereunder. Any excess or remaining proceeds shall be the property of Lessor. In the event of any default hereunder by Lessee, Lessee irrevocably appoints Lessor as Lessee's attorney in fact to make claim for, receive payment of, and execute and endorse all documents, checks, or drafts received in payment for loss or damage under any insurance policy. In the event that Lessee shall fail to insure the Equipment as required herein or in the event that such insurance shall expire, Lessor shall have the right (but not the obligation) to procure such insurance coverage and any and all amounts expended by Lessor in connection therewith shall become additional rent hereunder and shall be immediately paid by Lessee to Lessor.

14. **Title, Liens and Taxes:** Title to the Equipment shall at all times remain in Lessor, and Lessee will, at its sole expense, at all times protect and defend Lessor's title in and to the Equipment, and in furtherance thereof, Lessee will keep the Equipment free and clear of all levies, liens, and encumbrances of any nature whatsoever and will be responsible for the payment of and will promptly pay and indemnify Lessor from and against all license and registration fees, assessments, imports, charges, filing or recording fees, documentary stamp taxes, sales/use taxes, personal property taxes, gross receipts taxes, excise taxes, including value added taxes, and all other taxes (local, state, and federal) which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession or use of the Equipment whether assessed to Lessor or Lessee, excluding, however, all taxes on or measured by Lessor's net income. Lessee will file all personal property tax returns covering the Equipment and will pay all personal property taxes assessed thereon. Lessee will provide Lessor with copies of all such personal property tax returns, together with evidence of payment thereof, not later than fifteen (15) days following the date such payment is due. Where applicable, Lessee shall provide Lessor with a tax exemption certificate acceptable to the taxing authorities. In the event that Lessee shall fail to make any such filings or pay such fees, taxes or charges, Lessor shall have the right (but not the obligation) to pay such amounts and such amounts shall become additional rent hereunder and shall be immediately paid by Lessee to Lessor. Lessee shall, at Lessor's request and Lessee's sole expense, affix and keep affixed in a prominent place on the Equipment labels, plates or other markings acceptable to Lessor stating that the Equipment is owned by Lessor.

15. **Assignments:** LESSEE WILL NOT, IN ANY MANNER, SUBLEASE, ASSIGN, TRANSFER, PLEDGE, MORTGAGE, ENCUMBER OR HYPOTHECATE THIS LEASE OR THE EQUIPMENT OR PERMIT ANY OF ITS RIGHTS UNDER THIS LEASE OR IN THE EQUIPMENT TO BE SUBJECT TO ANY LIEN, CHARGE OR ENCUMBRANCE OF ANY NATURE WHATSOEVER. Lessor may assign, pledge, mortgage, transfer, grant participation in, or otherwise dispose of any of its rights in this Lease and/or the Equipment without notice to Lessee. No breach or default by Lessor hereunder or pursuant to any other agreement between Lessor and Lessee will excuse performance by Lessee of any provision hereof. LESSEE ACKNOWLEDGES AND AGREES THAT THE RIGHTS OF ANY ASSIGNEE IN AND TO SUMS PAYABLE BY LESSEE WILL NOT BE SUBJECT TO ANY ABATEMENT, DEFENSE, SET-OFF, COUNTERCLAIM OR RECOUPMENT WHATSOEVER FOR ANY REASON. NO SUCH ASSIGNEE OF LESSOR WILL BE OBLIGATED TO PERFORM ANY DUTY, COVENANT, OR CONDITION REQUIRED TO BE PERFORMED BY LESSOR UNDER THE TERMS OF THIS LEASE SO LONG AS LESSOR REMAINS OBLIGATED TO PERFORM SUCH DUTIES, COVENANTS, OR CONDITIONS.

16. **Default:** Any of the following events or conditions will constitute an event of default hereunder: (a) Lessee's failure to pay when due any rent or other amount due hereunder within five (5) days after its due date; (b) seizure of the Equipment or any portion thereof under legal process or Lessee's removal, sale, transfer, encumbrance or parting with possession or control of the Equipment or any portion thereof; (c) Lessee's failure to perform any other term, covenant or condition hereof if such failure is not cured within ten (10) days after written notice thereof; (d) Lessee's failure to perform any obligation under any other agreement between Lessor and Lessee, whether or not related to this Lease; (e) the voluntary or involuntary making of an assignment by Lessee for the benefit of creditors, appointing of a receiver or trustee for Lessee or for any of Lessee's assets, institution by or against Lessee of any formal or informal proceeding of bankruptcy, reorganization, dissolution, liquidation, settlement of claim against or winding up of affairs of Lessee under any other insolvency law providing for the relief of debtors, or the making by Lessee of a transfer of all or a material portion of Lessee's assets or inventory not in the ordinary course of business; (f) Lessee's breach of any warranties set forth herein. In addition, any default and/or failure by Lessee to perform any other obligations set forth in or under any other agreement, note, or undertaking by and between Lessor and Lessee (including, but not limited to, any other Equipment Lease Agreement) shall constitute a default under this Lease, and upon the occurrence of such event of default, Lessor shall have the rights and privileges set forth in this Lease.

17. **Remedies:** Upon Lessee's default, Lessor will have the right to exercise any one or more of the following remedies, without affecting Lessor's title or right to possession of the Equipment: (a) terminate this Lease; (b) accelerate all rent payments and declare due, sue for, and recover all rents and other amounts then accrued or thereafter accruing for the entire Lease term; (c) render the Equipment unusable by electronic or other means and/or require Lessee to promptly redeliver the Equipment to Lessor in the manner specified herein; and/or (d) repossess the Equipment without notice, legal process, prejudicial hearing, or liability for trespass or other damage (which rights Lessee hereby voluntarily and knowingly waives). Lessor, at its sole option, may keep idle or sell or lease the Equipment upon such terms as it determines in its sole discretion and apply the proceeds to Lessee's obligations hereunder, after deducting from such proceeds: (x) all costs and expenses of repossession, disposition, and collection including all attorneys' fees reasonably incurred by Lessor; (y) in connection with any effort by Lessor to enforce the provisions hereof, Ten (10.00%) percent of the balance of the capitalized cost of the Equipment outstanding upon default for Lessor's administrative costs and time, as liquidated damages and not as a penalty, incurred as a result of Lessee's default; and (z) an amount equal to a Purchase Option Price to reimburse Lessor for Lessor's residual interest in the Equipment. Any excess or remaining proceeds shall be the property of Lessor. Lessee will promptly pay to Lessor any resulting deficiency, together with interest from the date due (whether by acceleration or otherwise) at the rate of eighteen percent (18%) per annum (or the maximum amount permitted by law, whichever is less). All such remedies are cumulative and may be enforced separately or concurrently and are in addition to any other rights or remedies available to Lessor at law or in equity.

18. **Security Interest:**

(a) In the event this Lease is deemed to be a security agreement or lease in the nature of a security agreement, Lessee hereby grants to Lessor and Lessor hereby retains a continuing purchase money security interest in the Equipment, together with any and all proceeds (as presently or hereafter defined by the Uniform Commercial Code ("UCC")) of the Equipment including, but not limited to, cash, money, promissory notes, accounts, accounts receivable, documents, instruments, chattel paper, intangibles (including general and payment intangibles), contract rights, leases, lease proceeds, rental payments, license fees, trade-ins, equipment, fixtures, accessories and attachments, and the proceeds and products of the foregoing, all as presently or hereafter defined by the Uniform Commercial Code. Lessee shall join with Lessor in executing/authenticating one or more financing statements and other documents, to the extent required by the UCC in a form satisfactory to Lessor to evidence Lessor's interest in the Equipment. Lessee shall keep the Equipment free from any adverse lien, security interest, or encumbrance, and will not store or use the Equipment or any part thereof in violation of any statute or ordinance. In the event Lessee shall be in default under this Lease, Lessor, in addition to any remedies hereunder, shall have the remedies of a secured party under the UCC.

(b) In addition to the provisions of subparagraph (a) hereof, Lessee hereby assigns, transfers and pledges to Lessor, all of Lessee's right, title and interest in and to the Equipment and hereby grants to Lessor a security interest in and to the Equipment in order to further secure the payment of any and all indebtedness of any nature whatsoever owing from Lessee to Lessor from time to time, whether presently existing or hereafter arising, and the prompt, full and faithful performance by Lessee of any and all provisions to be kept, observed, or performed by Lessee under this Lease or any other agreements now existing or hereafter entered into by and between Lessee and Lessor.

19. **Additional Documents:** During the term of this Lease, Lessee shall furnish Lessor the following, which shall be prepared in accordance with generally accepted accounting principles: (a) quarterly financial statements of Lessee within sixty (60) days after the end of each fiscal quarter, and (b) within ninety (90) days after the close of each fiscal year, an audited, consolidated balance sheet, profit and loss statement, and source and application of funds, as of the end of each such year. Lessee shall also execute/authenticate and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems advisable for confirmation or perfection of this Lease and Lessor's rights hereunder, including the filing or recording of this Lease or financing statements relating hereto.

20. **Governing Law, Jurisdiction, Venue and Waiver of Trial by Jury/Bond:** This Lease will be binding and effective only when signed by a duly authorized representative of Lessor. EXCEPT FOR THE PERFECTION OF ANY SECURITY INTEREST OR LIEN IN ANY OTHER STATE, THIS LEASE WILL BE GOVERNED AND CONSTRUED IN ALL RESPECTS BY THE INTERNAL LAWS AND DECISIONS, OTHER THAN ANY CONFLICT OF LAWS PROVISIONS, OF THE STATE OF ILLINOIS, INCLUDING, WITHOUT LIMITATION, ALL MATTERS OF CONSTRUCTION, VALIDITY, ENFORCEABILITY, AND PERFORMANCE. LESSEE (i) CONSENTS AT LESSOR'S ELECTION AND WITHOUT LIMITING LESSOR'S RIGHT TO COMMENCE AN ACTION IN ANY OTHER JURISDICTION, TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT (FEDERAL, STATE OR LOCAL) SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS; (ii) WAIVES ANY OBJECTION TO IMPROPER VENUE AND FORUM NON CONVENIENS; AND (iii) CONSENTS TO SERVICE OF PROCESS BY CERTIFIED MAIL, POSTAGE PREPAID, ADDRESSED TO LESSEE AT ITS ADDRESS AS SET FORTH ON THE TITLE PAGE. LESSEE HEREBY WAIVES TRIAL BY JURY. LESSEE SHALL BRING ANY ACTION ARISING OUT OF THIS LEASE ONLY IN THE FEDERAL OR STATE COURTS LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS. IN THE EVENT LESSEE INSTITUTES ANY ACTION IN ANY COURT OTHER THAN A COURT LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS, LESSEE SHALL ASSUME ALL OF LESSOR'S COSTS IN TRANSFERRING SAID PROCEEDING TO A COURT LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS, INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES. In the event that Lessee shall contest Lessor's right to possession in any action relating to the Equipment,

Lessee shall post a bond in the amount of (__) times the sales price or value (whichever is greater) the Equipment to protect Lessor's interest therein. Lessor shall not be required to post any bond or other forms of security in connection with any action for the repossession or replevin of, or otherwise relating to, the Equipment.

21. **Lessee's Representations/Warranties/Grants**

(a) Lessee warrants, represents and covenants that (i) Lessee is an individual, organization, or registered organization as indicated on the line marked "Entity Type" on the Title Page; (ii) if Lessee is a registered organization, Lessee's state of organization is the state set forth on the line marked "State of Organization" on the Title Page; (iii) Lessee's place of business (or chief executive office, if Lessee has more than one place of business) is set forth on the Title Page; (iv) if Lessee is an individual, Lessee's principal residential address is set forth on the Title Page; and (v) Lessee shall not change its form of business or organization, change or in any way amend or alter its legal name or change its residential address, place of business or chief executive office without providing Lessor at least thirty (30) days prior written notice thereof.

(b) Lessee hereby appoints Lessor as its attorney in fact, and authorizes Lessor, its agents, attorneys and representatives to, (i) sign/authenticate on behalf of Lessor such additional documents/records as may be required from time to time to create, amend, extend, continue, maintain or perfect the interests described herein or otherwise granted to Lessor, and (ii) to make/undertake any filings or registrations with governmental officials or offices and take such other actions as Lessor deems appropriate to perfect, amend, continue and maintain the perfection of the interests created hereby or otherwise granted to or retained by Lessor. In addition, Lessee hereby ratifies any filings made against Lessee by Lessor prior to the date hereof.

22. **Indemnification:** Lessee hereby assumes liability for and agrees to indemnify, protect, save and keep harmless Lessor from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs, expenses, and disbursements, including attorneys' fees, court costs, and legal expenses, of whatever kind or nature imposed on, incurred by, or asserted against Lessor in any way relating to or arising out of this Lease or the manufacture, purchase, ownership, delivery, lease, possession, use, operation, condition, return, or other disposition of the Equipment by Lessor or Lessee, any claim for patent, trademark, or copyright infringement, any claim arising out of strict liability in tort or other products liability theory, and any taxes for which Lessee is responsible hereunder or otherwise. Lessee's indemnities will survive the expiration or termination of this Lease.

23. **Miscellaneous:** (a) This Lease constitutes the entire agreement between Lessor and Lessee and supersedes any and all prior agreements, correspondence, quotations, or understandings heretofore in force between the parties relating to the subject matter hereof. There are no agreements (except for Amendment #1) between Lessor and Lessee with respect to the Equipment and no promises, representations or statements relative thereto have been made by Lessor, except those specifically set forth and made part of this Lease. Acceptance of this Lease is limited to the terms and conditions, set forth herein. Any additional or other terms or conditions are rejected by Lessor. This Lease shall be binding upon the parties hereto and their respective successors and permitted assigns. (b) The terms and conditions of this Lease shall be interpreted in such a manner as to be effective and valid under applicable law. If any term or condition or part of this Lease is held invalid, the remaining terms and conditions of this Lease shall not be affected thereby. (c) THIS LEASE MAY BE MODIFIED, CANCELLED OR RESCINDED ONLY BY THE WRITTEN AGREEMENT OF BOTH PARTIES, EXECUTED BY THEIR DULY AUTHORIZED AGENTS. (d) No claim arising out of any breach of this Lease may be discharged in whole or in part by waiver or renunciation of such claim unless such waiver or renunciation is in writing and signed by the parties hereto. Any failure by Lessor to enforce at any time any term or condition of this Lease shall not be construed as a waiver of Lessor's right thereafter to enforce each and every term and condition of this Lease. (e) All rights available to Lessor under the UCC (as now or hereafter in effect), except as specifically limited or excluded herein (even though not specifically enumerated herein) are expressly reserved to Lessor as remedies available in the event of default. (f) Any notices required to be given hereunder will be given in writing and directed to the address of each party as set forth herein, or to such other address as either party may substitute by written notice to the other. (g) Lessee hereby authorizes Lessor to insert or revise the First Payment Due Date, payment amount and the Equipment serial number and/or other description on the Title Page of this Lease and to correct any patent errors or omissions in this Lease. (h) Any true and correct photocopy or facsimile copy of this Lease (or any other documents executed in connection herewith) transmitted by Lessee to Lessor, are and shall be deemed to be, originals of this Lease and may be utilized by Lessor for any purpose whatsoever, including any proceedings relating to this Lease and/or the Equipment.

# EXHIBIT "B"

Lease No. SUI0195

# CONTINUING GUARANTY

| Beneficiary: | | Obligor: | |
|---|---|---|---|
| Name | MAC FUNDING CORPORATION | Name | TS PRINTING COMPANY, INC. |
| Address | 1500 Michael Drive | Address | Sovereign Row; Suite A |
| City | Wood Dale | City | Dallas |
| State | IL   Zip 60191 | State | TX   Zip 75247 |
| Contact | Mr. B. Krawulski   Phone 630-238-5605 | Contact | Mr. Terry Slagle   Phone 214-630-0300 |

To induce MAC Funding Corporation ("MAC") to enter into the Equipment Lease Agreement dated July 22, 2003 by and between MAC and Obligor (the "Agreement"), and as part of the consideration for the execution thereof, we, the undersigned ("Guarantor"), do hereby, jointly and severally and unconditionally guarantee to MAC the financial responsibility of Obligor at all times and the full and prompt payment and performance by Obligor of all obligations which Obligor presently or hereafter has or may have to MAC under the Agreement, and under any other agreement by and between MAC and Obligor, (regardless of any invalidity or unenforceability thereof) and the payment when due of all rent or installment(s) and all other sums and indebtedness presently or hereafter owing by Obligor to MAC thereunder. This is a guaranty of payment and performance and not of collection only. Guarantor further agrees to indemnify MAC against any losses MAC may sustain and expenses it may incur, including, but not limited to, any administrative or legal costs, fees, or expenses, as a result of any default by Obligor under the Agreement and/or as a result of the enforcement by MAC of any of its rights against Guarantor hereunder. Guarantor hereby expressly waives all defenses which might constitute a legal or equitable discharge of a surety or guarantor, and agrees that this Guaranty shall be valid and unconditionally binding upon Guarantor in any event and under all circumstances. This Guaranty shall continue to be effective or reinstated, as the case may be, if at any time any payment of any indebtedness by Obligor to MAC is rescinded or must otherwise be returned by MAC upon the insolvency, bankruptcy or reorganization of Obligor or otherwise, all as though such payment had not been made.

Guarantor hereby waives notice of any default or nonpayment or nonperformance by Obligor under the Agreement, and waives notice of presentment, protest, and demand, and of all other matters to which Guarantor might otherwise be entitled to be notified. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect, notwithstanding any renewal, modification, or extension of the Agreement or the term thereof. Guarantor agrees that its liability under this Guaranty shall be absolute, primary and direct, joint and several, and that MAC shall not be required to pursue any right or remedy it may have against Obligor under the Agreement or the Equipment (as defined therein) or otherwise before enforcing this Guaranty against Guarantor.

Guarantor hereby agrees that the failure of MAC either to insist in any one or ore instances upon a strict performance or observance of any of the terms, provisions, or covenants of the Agreement or any other agreements, or to exercise any of its rights thereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants, or rights, but such terms, provisions, covenants, and rights shall continue and remain in full force and effect. Receipt by MAC of any rent or other sums payable under the Agreement with knowledge that Obligor has breached any of the terms, provisions, or covenants of the Agreement shall not be deemed to be a waiver by MAC of such breach.

No assignment or other transfer by MAC or Obligor of any interest, right, or obligation under the Agreement, or assumption by any third party of the obligations of Obligor under the Agreement, shall extinguish the unconditional, absolute, primary, and direct liability of Guarantor under this Guaranty. This Guaranty may be assigned by MAC without notice to Guarantor, but may not be assigned by Guarantor. Any assignee of MAC shall have all of the rights of MAC hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to each assignee in the first instance. This Guaranty shall be construed liberally in MAC's favor, shall inure to the benefit of MAC, and its successors and assigns, and shall be binding upon Guarantor and its heirs, executors, administrators, personal representatives, successors, and assigns. MAC shall have a right of set-off against, and Guarantor hereby grants a security interest in, all moneys, securities, and other property of Guarantor now or hereafter in the possession of MAC.

The Guaranty set forth in and created by this Guaranty is a continuing guaranty and the liability and duty of Guarantor hereunder shall continue for so long as Obligor shall be or remain indebted to MAC under the Agreement or otherwise. THE GUARANTY SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF ILLINOIS, AND SHALL BE GOVERNED AND CONSTRUED IN ALL RESPECTS BY THE INTERNAL LAWS AND DECISIONS, OTHER THAN CONFLICTS OF LAWS PROVISIONS, OF THE STATE OF ILLINOIS, INCLUDING, WITHOUT LIMITATION, ALL MATTERS OF CONSTRUCTION, VALIDITY, ENFORCEABILITY AND PERFORMANCE. GUARANTOR (a) CONSENTS AT LESSOR'S ELECTION AND WITHOUT LIMITING LESSOR'S RIGHTS TO FILE AN ACTION IN ANY OTHER STATE, TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT OF GENERAL JURISDICTION (FEDERAL, STATE OR LOCAL) LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS WITH RESPECT TO ANY LEGAL PROCEEDINGS ARISING OUT OF THIS GUARANTY, AND (b) WAIVES, TO THE FULLEST EXTENT IT MAY EFFECTIVELY DO SO, THE DEFENSE OR OBJECTION OF IMPROPER VENUE AND FORUM NON-CONVENIENS TO THE MAINTENANCE OF ANY SUCH LEGAL PROCEEDINGS. GUARANTOR HEREBY WAIVES TRIAL BY JURY. GUARANTOR IRREVOCABLY AGREES THAT IT SHALL BRING ANY LEGAL PROCEEDING ARISING OUT OF THE GUARANTY ONLY IN THE FEDERAL OR STATE COURTS LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS. IN THE EVENT GUARANTOR INSTITUTES ANY LEGAL PROCEEDING IN ANY COURT OTHER THAN A COURT LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS, GUARANTOR SHALL ASSUME AND PAY ALL OF MAC'S COSTS IN TRANSFERRING SAID PROCEEDINGS TO A COURT LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS, INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES.

IN WITNESS WHEREOF, the undersigned have (has) executed this Guaranty this 24 day of July, 2003.

PERSONAL GUARANTOR:
(Signature of Individual)
(Print or Type Name of Individual) Mr. Terry Slagle
Social Security No.: 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
Home Address: 235 PR 2399
City, State, Zip: Alvord, TX 76225
Home Phone No.: 940-627-4953

PERSONAL GUARANTOR:
(Signature of Individual) Tami D. Slagle
(Print or Type Name of Individual) Ms. Tami Slagle
Social Security No.: 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
Home Address: 235 PR 2399
City, State, Zip: Alvord, TX 76225
Home Phone No.: 940-627-4953